# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JEANNETTE OPPEDISANO,    :
    Plaintiff,      :
              :
v.             :   3:07-cv-1693 (WWE)
              :
SOUTHERN CONNECTICUT    :
STATE UNIVERSITY,      :
    Defendant.     :

## MEMORANDUM OF DECISION ON
## DEFENDANT'S MOTION TO DISMISS

Plaintiff Jeannette Oppedisano brings claims stemming from her employment with defendant Southern Connecticut State University.  Now pending is defendant's motion to dismiss (Doc. #11).  For the following reasons, the motion to dismiss will be granted in part and denied in part.

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 as to plaintiff's federal law claim and pursuant to 28 U.S.C. § 1367 as to plaintiff's state law claims.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the complaint as true.

Plaintiff is employed by defendant Southern Connecticut State University ("SCSU") as the Chairperson of the Department of Management/MIS of the School of Business.  She is also a professor of Management/MIS in the School of Business.  She has been employed by defendant since 2000.  She is the only female chairperson in the School of Business.  Plaintiff is a past co-coordinator of the Women's Studies Program.

She is a married female and is over 62 years old.  Defendant is a public university with more than 100 employees.[1]  Dr. Cheryl Norton is the President of SCSU.  Dr. Melvin Prince is a faculty member in the Marketing Department.  Drs. Samuel Andoh and Robert Kirsch are faculty members of SCSU.  Dr. Shyam Lodha is the chair of the Marketing Department.

Plaintiff claims that she was subjected to an ongoing pattern of harassment, discrimination, disparate treatment and retaliation based on her gender, marital status, age and vocal opposition to and complaints about the hostile and discriminatory environment at SCSU.

Plaintiff was paid less than her male counterparts and not given "research reassigned time" that she was promised, although male professors received such time. In the academic year 2000-01, plaintiff filed an internal sex discrimination complaint against defendant and the male dean at the time, Dr. Kenneth Kraft, over these issues. Thereafter, plaintiff applied for the School of Business research/publication award for the publication of her book.  The all-male chairs' council rejected plaintiff's application and gave no research award that year.  Plaintiff claims that the male faculty has perceived her as having an agenda on behalf of women.  She has been told to "accommodate" male attitudes to make life easier on her.

After being denied the research award, plaintiff served on the committee that made recommendations concerning Market Pay Adjustments.  When a male colleague did not receive such an adjustment, he charged that plaintiff had made the decision

---

[1]     Plaintiff names as defendant only SCSU and not the individuals discussed in the complaint.

based on a personal dating relationship she was in although the decision was made by a male vice president.

Dean Kraft stated in a luncheon meeting with Dr. Kenneth Laird, "I hear you're going hot and heavy with Jeannette."  Plaintiff complained to agents of defendant about this comment.

Despite being qualified and receiving the recommendation of a female vice president, plaintiff was not promoted to Interim Dean of the School of Business.  Agents of defendant refused to interview plaintiff, and instead, Dr. Bharat Bhalla, a male friend of the male chairperson of the Marketing Department, was hired although agents of defendant knew of his negative treatment of women at Fairfield University.

After Dr. Bhalla was hired, plaintiff met with Dr. Norton.  Plaintiff asked Dr. Norton how SCSU would react should Dr. Bhalla behave at SCSU as he did at Fairfield University.  Dr. Norton responded by asking plaintiff "how old" she was.

At this time, a male faculty member told Dr. Ellen Beatty, a female colleague, that plaintiff was a "man-hater."

On November 13, 2004, plaintiff made a complaint to defendant about discriminatory remarks based on her age that were made to and about her by Dr. Bhalla in private and school-wide meetings.  In retaliation, SCSU cancelled plaintiff's department's search for a full-time tenure-track faculty member.

On May 6, 2005, plaintiff wrote to Norton and Chancellor Cibes about "Discriminatory Questions and Remarks in the Search Process for the Provost and Vice-President for Academic Affairs at SCSU."  In her letter, plaintiff noted that there was inappropriate age-based language in certain job search-related materials and that

3

such language was only provided to the female candidates.  She also complained about age-based remarks made by Dr. Bhalla concerning the MIS tenure-track search process.

On September 12, 2005, plaintiff wrote a letter to Governor Jodi Rell, copied to Chancellor Cibes and the Board of Trustees, in which plaintiff complained about discriminatory conduct at SCSU.  On October 14, plaintiff filed an internal discrimination complaint with defendant based on marital status, gender, hostile workplace and retaliation.  Plaintiff forwarded the letter on November 28 to Chancellor Cibes and other members of the Board of Trustees.

On September 21, 2005, an agent of defendant wrote in an email that plaintiff had "abused and disgraced" her role as chair of the School of Business.  The email further accused plaintiff of participating in and furthering "irregular voting" at a department meeting and suggested that the "irregular voting" was a result of plaintiff's marital status.  The email called for plaintiff to "resign immediately from your position as Chair of the Management Department, which you have abused and disgraced.  If not, you should be removed from this office by the administration."  Other similar letters and emails were prepared and sent to defendant.  These letters were published to plaintiff's peers and supervisors.  Such claims have adversely affected plaintiff's reputation.

Plaintiff brought a sexual harassment complaint against Dr. Lodha alleging unwanted physical contact in the Business Department office.  She also alleged that inappropriate and demeaning cartoons had been circulated to the chairs' council members and the faculty of the Accounting Department by Dr. Radha Narumanchi.

On January 10, 2006, defendant denied plaintiff's request for a sabbatical leave,

4

although her leave had been approved by the Sabbatical Leave Committee and defendant had approved 21 other requests for sabbaticals.  Plaintiff's request for a Market Pay Adjustment was denied by defendant.

Plaintiff exhausted her administrative remedies prior to suit.  In her three-count complaint, she alleges that defendant violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, and asserts a claim for intentional infliction of emotional distress.  Defendant's motion to dismiss contends that plaintiff's claims under CFEPA and for intentional infliction of emotional distress are barred by the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  A plaintiff is obliged to amplify a claim with some factual allegations in those contexts

5

where such amplification is needed to render the claim plausible.  Iqbal v. Hasty, 490

F.3d 143 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading),

rev'd on other grounds sub nom., Ashcroft v. Iqbal, 129 S. Ct. 1937.

## I.    Connecticut Fair Employment Practices Act Claim

Defendant argues that plaintiff's claim under section 46a-60 is barred by the

Eleventh Amendment.  The Eleventh Amendment bars suits against states in federal

courts.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).

In doing so, it "affirms that the fundamental principle of sovereign immunity limits the

grant of judicial authority in Article III."  Richardson v. New York State Dep't of

Correctional Serv., 180 F.3d 426, 448 (2d Cir. 1999).  A state may be haled into federal

court when it waives its sovereign immunity.  Close v. New York, 125 F.3d 31, 35 (2d

Cir. 1997).  Waiver is only found when stated "by the most express language or by such

overwhelming implications from the text as will leave no room for any other reasonable

construction."  Edelman v. Jordan, 415 U.S. 651, 673 (1974); Close, 125 F.3d at 39.

At the time that defendant filed its motion, it was an open question under

Connecticut law whether section 46a-60 was a waiver of Connecticut's sovereign

immunity.  Since that time, the Connecticut Supreme Court has ruled that section 46a-

60 constitutes such a waiver of the state's sovereign immunity.  See Lyon v. Jones, 291

Conn. 384, ___ (2009) ("[S]ection 45a-100 represents an unambiguous waiver of

sovereign immunity, authorizing actions against the state for alleged discriminatory

employment practices in violation of section 46a-60.").  In light of this ruling, plaintiff's

claim under CFEPA may go forward against the state university.  Defendant's motion

will be denied on this claim.

**II.      Intentional Infliction of Emotional Distress**

There is no similar waiver of the state's sovereign immunity for a common law claim such as intentional infliction of emotional distress.  Richardson, 180 F.3d at 447-48; Gaynor v. Martin, 77 F. Supp. 2d 272, 281-282 (D. Conn. 1999).  Therefore, plaintiff's common law claim will be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendant's motion to dismiss (Doc. #11) as to plaintiff's claims under CFEPA and GRANTS the motion as to plaintiff's claim of intentional infliction of emotional distress.  Plaintiff is instructed to file an amended complaint within ten days of the filing of this ruling.

Dated at Bridgeport, Connecticut, this 5th day of June, 2009.


_____/s/_____
Warren W. Eginton
Senior United States District Judge