UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEANNETTE OPPEDISANO, : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:07-cv-1693-WWE |
| : | |
| SOUTHERN CONNECTICUT : | |
| STATE UNIVERSITY : | |
|     Defendant. : | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jeannette Oppedisano brought this action against defendant Southern Connecticut State University pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e. Plaintiff alleges she was subjected to discrimination based on gender, marital status, and age. In addition, plaintiff claims that defendant retaliated against her for making complaints. Finally, plaintiff alleges she was subjected to a hostile working environment.

Defendant has filed a motion for summary judgment on all of plaintiff's claims. For the following reasons, defendant's motion will be granted in part and denied in part.

**BACKGROUND**

The parties have submitted depositions, affidavits, interrogatories, and other documents that reveal the following factual background.

Plaintiff was employed by defendant Southern Connecticut State University as the Chairperson of the Department of Management within the School of Business. Of the four departments within the School of Business, she was the only female chairperson. Plaintiff was also a professor of management at the School.

A high level of distrust and personality conflict existed within the School of Business. This animosity lead to significant infighting and negative communications between colleagues.

During plaintiff's tenure at the School, defendant declined to consider her for the position of dean when openings became available on three separate occasions. At various times, plaintiff's applications for sabbatical and pay increases were denied. Defendant also declined to grant plaintiff a research award for which she applied.

On March 17, 2006, plaintiff filed a charge of discrimination against the Board of Trustees with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

Plaintiff filed this complaint against defendant claiming discrimination, retaliation, and hostile work environment. Plaintiff's allegations are detailed below.

**Plaintiff's Allegations**

Plaintiff alleges that she has been subjected to an ongoing pattern of harassment, discrimination and disparate treatment and retaliation based upon her gender, marital status, age and vocal opposition to and complaints about the hostile and discriminatory environment at defendant University and the actions and agents of defendant. The following is a list of events addressed by plaintiff in her memorandum in opposition to defendant's motion to dismiss.

Plaintiff alleges that two men hired at the same time as her were given higher salaries and more research "reassign time." However, salaries are a function of experience, demand within the field and other factors. Plaintiff does not contend that rate of pay is based solely on start date.

Plaintiff alleges that SCSU's research committee declined to give her a research award in order to avoid giving the research award to a female. However, plaintiff acknowledges in her deposition that defendant's stated reason for declining to issue her an award was that none of her

book's research was done while employed by defendant. She also stated that she did not know if awards were given every year, or how many people applied for awards. Plaintiff contends that the committee used impermissible criteria in order to justify denying her the award. However, during her deposition, plaintiff admitted that she was unaware of any award criteria. (Oppedisano Dep. at 38-43).

Plaintiff alleges she encountered hostile attitudes based on gender when appointed to the women's studies program. However, her deposition answers state that objection to plaintiff's assignment was based on plaintiff's time being taken away from her department. Her supervisors wanted her to be able teach a full management course-load, which she could not do as coordinator of the women's studies program. Id. at 63-65.

Plaintiff alleges that defendant made her wait for months and placed numerous obstacles in the way of giving her a private office that her role as department chair demanded. However, she became department chair in January and received a private office in March. Furthermore, plaintiff acknowledged that another male department chair did not have a private office, but discarded that instance as immaterial because, there, the department chair a friend of his office-mate. Id. at 85-88, 93-95, 101.

Plaintiff alleges that Dean Kraft vigorously opposed her appointment as the only female department chair. However, plaintiff's deposition states that Dean Kraft didn't want *anyone* to be appointed as the chair until he had left his position. Plaintiff further stated that she was elected as chair regardless of Dean Kraft's opposition. Id. at 91-92

Plaintiff alleges that she, the only female department chair, was not given the same discretion and hiring authority as the other chairs. Plaintiff claims she was unfairly limited to

3

hiring only Ph.D.'s.  However, in deposition, when asked whether other department chairs faced similar limitations, plaintiff responded, "I have no idea."  Id. at 121-124.

Plaintiff alleges that she witnessed a male co-worker throw a pencil at a female co-worker during a meeting.  At another meeting, plaintiff claims that Dr. Bhalla let Dr. Kirsch yell at her.  When asked what Dr. Kirsch was yelling about, plaintiff couldn't remember.  Id. at 158-159.

Plaintiff alleges that when she told people outside of the School of Business that she worked for the School of Business, they would say, "Oh my God, we're sorry for you."

Plaintiff alleges that Dr. Bhalla referred to his secretary as "a very nice girl," and generally referred to women as "nice girls" or "girls," despite being told it was inappropriate.

Plaintiff alleges that there were a number of instances where Dr. Kirsch had yelled at people and threatened them, but gives no specifics.

Plaintiff alleges that Dean Bhalla distributed a magazine article about women crying at work throughout the School of Business.

Plaintiff alleges that Dr. Lodha would inappropriately touch job applicants on the arm during secretarial searches.  However, plaintiff stated in her deposition that he didn't understand that this was not something he should do.  Id. at 185-86.

Plaintiff alleges that Dr. Lodha inappropriately attempted to hug her after she gave him printer ink when his department ran out.

Plaintiff alleges that when Dr. Narumanchi found a female employee at the computer in his office, he started screaming at her before giving her a chance to explain that she was making necessary updates to his computer.  The female employee was so scared that she reported the incident to the police.

Plaintiff alleges that her department, which consisted of three women and seven men, frequently refused to hire qualified female candidates. Plaintiff gave an example of a recommended candidate who was not offered a position. However, the candidate's Ph.D. was from an unaccredited school in France.

Plaintiff alleges that Dr. Prince would yell at and intimidate a female secretary from plaintiff's department.

Plaintiff alleges that she helped walk a female student through the process of filing a complaint against a professor.

Plaintiff alleges that when she refused to give permission for a student to enter her course, Dr. Eldridge yelled at plaintiff in a threatening fashion.

Plaintiff alleges that at a School of Business meeting, male professors made demeaning comments about other professors who had been granted research time, three out of five of whom were female. However, plaintiff was not at the meeting. Id. at 196-98.

Plaintiff alleges that after she became chair, Dean Kraft began meeting only with the other department chairs (all male), while refusing to invite her to the meetings. However, in her deposition, plaintiff stated that to her knowledge, Dean Kraft didn't have meetings *with any of the chairs*. "So for the time that I was chair and he was dean, we did not have meetings." Id. at 74-75.

Plaintiff alleges that when she submitted paperwork that would have allowed her department to hire more tenure-track faculty, Dean Kraft refused to move on plaintiff's request until the deadline passed, leaving plaintiff to deal with a short-handed department.

Plaintiff alleges that when she applied for the position of interim Dean in July, 2004, she

was refused an interview based on her age and gender.  Plaintiff claims discriminatory intent can be shown by the fact that defendant interviewed a similarly situated male candidate, Dr. Andoh.  However, plaintiff admitted in her deposition that she had no knowledge of any other interim candidates in the summer of 2004.  Plaintiff stated, "I am unaware of [the president] considering anyone."  Id. at 143.

Plaintiff alleges that when she applied for a position as Dean of the business school in 2006, she was not interviewed because of her age and gender.  Defendant asserted that it was not willing to consider an internal candidate.  Plaintiff argues that defendant interviewed Dr. Andoh, a male internal candidate, thus demonstrating that defendant's proffered reason was pretextual.  However, during her deposition, when asked whether Dr. Andoh applied or whether he was selected for an interview, plaintiff responded, "I don't know."  Id. at 257.

Plaintiff again applied and was denied the position of Dean in 2009.  Defendant explained that the committee was looking for someone with prior experience as a dean.  Plaintiff contends that her previous relevant experience at a previous school demonstrates that defendant's proffered reason was pretextual, giving rise to an inference of discrimination.  However, plaintiff does not assert that she had prior experience as a dean.  More importantly, defendant hired a *female* dean from Western Connecticut State University.

Plaintiff alleges she was discriminatorily denied a sabbatical in 2005 because a male in her department was then approved.  However, a university-wide faculty committee ranked her proposal 23 out of 29.  Other female candidates were awarded sabbaticals in 2005.  Moreover, plaintiff was granted a sabbatical in 2007 based on that year's rankings.

Plaintiff alleges that she was discriminated against when she was denied a market pay

adjustment in 2005.  However, both male and female colleagues received pay adjustments that year.  Plaintiff has presented no evidence that the committee considered gender or age.  Importantly, plaintiff was granted a $5,500 pay adjustment in 2006.  She was the only person who received an adjustment that year - over male colleagues who also applied.

Plaintiff was married to a professor within her department.  Plaintiff alleges that she has shown facts that a reasonable jury could rely on in concluding that many of these adverse employment actions were the result of defendant discriminating against her based on her marital status.  To support this claim, plaintiff points to a memo sent to her detailing defendant's nepotism policy.

Plaintiff made numerous complaints and grievances to defendant concerning the above allegations of discrimination.  In addition, plaintiff filed one complaint with CHRO in March, 2006.  Plaintiff claims that she was subject to adverse employment action in retaliation for making these various complaints.  Plaintiff cites the above listed actions as evidence of retaliation.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International

Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

**Discrimination**

In Title VII cases, the plaintiff must meet the initial burden of offering evidence adequate to raise an inference of discrimination.  Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978).  Under the familiar burden shifting framework, the plaintiff bears the initial burden of demonstrating a prima facie case by showing (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) circumstances giving rise to an inference of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  After a prima facie case is made, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action, which, if proffered, places the burden on the plaintiff to demonstrate that the proffered reason is a pretext for unlawful discrimination.  Id.

Plaintiff is a woman over age forty, and thus is a member of a protected class.  She has demonstrated satisfactory job performance.  However, few of plaintiffs allegations describe behavior approaching adverse employment actions.  More importantly, plaintiff has not revealed

the existence of evidence that gives rise to an inference of discrimination.  Assuming *arguendo* that she has met her prima facie burden, plaintiff has not demonstrated that defendant's proffered reasons for the adverse employment actions were mere pretext for unlawful discrimination.

The prima facie element of an "adverse employment action" must be more than simply an unpleasant situation, mere inconvenience or alteration of job duties.  Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997).  "To show such an adverse action, a plaintiff must point to evidence of more than inconvenience; she must show an action that rises to the level of termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  Lewis v. City of Buffalo Police Dep't., 311 Fed. Appx. 417, 420 (2d Cir. 2009).

Assuming for the sake of argument that plaintiff's initial rate of pay and/or denial of sabbatical constitute adverse employment actions, plaintiff has not offered evidence giving rise to an inference of discrimination.  Plaintiff simply points to the gender difference between herself and male employees who were awarded sabbatical or who were given higher salaries.  This gender difference, on its own, is not enough to give rise to an inference of discrimination.  Professor compensation at defendant University covers a broad range.  The amount that each professor is paid depends on a multitude of factors including experience and demand within the field.  Some female professors make more than some male professors, and vice versa.  Plaintiff does not allege and has not pointed to evidence that shows a pattern of disparity of pay based on gender.  Likewise, the award of sabbatical is based on a committee's  ranking of proposals.  The group of twenty-two professors whose proposals outranked plaintiff's in 2005 was sexually

diverse. That a particular male in plaintiff's department was awarded sabbatical over plaintiff does not give rise to an inference of discrimination. Furthermore, plaintiff was awarded sabbatical two years later in 2007.

Plaintiff also contends that she should have been selected as Dean. She alleges that defendant's failure to interview and/or select her constituted adverse employment action resulting from gender discrimination. However, plaintiff admitted she doesn't know whether defendant interviewed any male professors from within the school. More importantly, defendant's decision to hire a *female* with prior dean experience weighs heavily against her gender discrimination claim. See Stouter v. Smithtown Central School Dist., 687 F. Supp. 2d 224, 233 (E.D.N.Y. 2010). Plaintiff has not met her burden of establishing an inference of gender discrimination with regard to defendant's hiring processes.

Disparate treatment of employees based on age has not been demonstrated. Plaintiff has submitted no evidence to show that she was discriminated against due to her age. Plaintiff's accusation of marital status discrimination is limited to a letter she received detailing defendant's nepotism policy. Considering that plaintiff's husband was employed within her department, the idea that the letter constituted unlawful discrimination against married people is untenable.

It is clear that no reasonable jury could find for plaintiff on her discrimination claims. Therefore, as to plaintiff's discrimination claims, defendant's motion for summary judgment will be granted.

**Retaliation**

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2)

that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2d. Cir. 1998). If a plaintiff satisfies her prima facie burden, this establishes a rebuttable presumption of retaliation, and where the defendant identifies a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's articulated reason is a pretext for retaliation. See Stratton v. Dep't for the Aging for the City of New York, 132 F.3d 869, 879 (2d Cir. 1997).

Plaintiff has described a litany of unpleasant interactions over the course of her employment with defendant. As a result of some of those interactions, plaintiff filed complaints with both her employer and CHRO. As discussed above, the majority of plaintiffs allegations do not describe dealings that constitute adverse employment actions. Moreover, plaintiff has not shown any causal connection between her protected activity and any alleged retaliation.

It is clear that no reasonable jury could find for plaintiff on her retaliation claims. Therefore, as to plaintiff's retaliation claims, defendant's motion for summary judgment will be granted.

**Hostile Work Environment**

To prevail on a claim of sexual harassment based on a hostile work environment, a plaintiff must establish two elements: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Petrosino v. Bell Atl., 385 F.3d 210, 221 (2d Cir. 2004).

Simply put, reasonable minds could differ as to the import of the evidence in determining whether plaintiff was exposed to a hostile work environment based on her sex. Defendant's liability depends on plaintiff showing that defendant knew or should have known about the harassment but failed to take appropriate remedial action. See Faragher v. City of Boca Raton, 524 U.S. at 775, 789 (1998). Here also, a genuine issue of material fact exists.

Defendant has tried to limit the hostile work environment claim based on a statute of limitations defense. However, "in the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider the entire time period of the hostile environment in determining liability." Petrosino, 385 F.3d at 221. Resolving all ambiguities and drawing all reasonable inferences against defendant, the Court finds that summary judgment on plaintiff's hostile work environment claim is not appropriate. Therefore, as to plaintiff's hostile work environment claim, defendant's motion for summary judgment will be denied.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED as to the discrimination and retaliation claims, but DENIED as to plaintiff's hostile work environment claim.

Dated this 27th day of September, 2012 at Bridgeport, Connecticut.

_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE